**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**KEITH L. MEACHUM,**

      **Plaintiff,**

**vs.**                           **Case No. 1:18cv125-CAS**

**NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,**

      **Defendant.**

_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a Social Security case referred to the undersigned United States Magistrate Judge upon consent of the parties, ECF No. 12, and reference by Chief United States District Judge Mark E. Walker. ECF No. 18. *See* Fed. R. Civ. P. 73; 28 U.S.C. § 636(c). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB). After careful consideration of the entire record, the decision of the Commissioner is affirmed.

## I.  Procedural History

On April 1, 2014, Plaintiff, Keith Meachum, applied for DIB benefits

with an alleged onset date of November 1, 2011, alleging disability based

on back and neck (chronic lower back pain) and joint/arthritis (upper/lower

body), neck and leg.   Tr. 16, 237, 276, 278.[1,2]   On May 25, 2017, Plaintiff

amended his alleged onset date of disability to April 8, 2014, his 50th

birthday.   Tr. 339.   Plaintiff's last date insured for DIB was June 30, 2017.

Tr. 16, 111, 276.   Plaintiff's application was denied initially on August 27,

2014, and upon reconsideration on March 2, 2015.   Tr. 16.

---

[1]   Citations to the transcript/administrative record, ECF No. 14, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

[2]   Plaintiff "was previously approved for a *closed period of disability* from December 29, 2008[,] through July 11, 2011[,] for osteoarthritis of the knees and the effects of bilateral total knee replacements, the residual effects of right-shoulder surgery for a torn rotator cuff and biceps tendon injury, and obesity.   It was noted that as of July 12, 2011, he had improvement in his medical condition to the extent he was capable of sedentary work.   (Exhibit B1A)."   Tr. 21 (emphasis added); *see* Tr. 96, 106 (On October 18, 2011, a different ALJ determined that Plaintiff was disabled "from December 29, 2008[,] through July 11, 2011, but not thereafter," i.e., his disability ended July 12, 2011.)   "For the current application, [Plaintiff] has alleged disability beginning November 1, 2011.   Later, he amended his request to indicate disability beginning April 8, 2014 (Exhibit B15E) [Tr. 339]."   Tr. 21.   The decision to award Plaintiff a closed period of disability ending on July 12, 2011, is not before this Court.   *See* Tr. 92-106. In addition, as noted by the Commissioner, "Plaintiff amended his alleged onset date of disability to April 2014, thereby forgoing any argument that he is disabled during the period prior to that date."   ECF No. 19 at 14.

On April 30, 2015, Plaintiff requested a hearing.   Tr. 16.   On June 1, 2017, Administrative Law Judge (ALJ) Robert Droker, conducted a hearing in Jacksonville, Florida, where Plaintiff appeared and testified.   Tr. 16, 70-84.   Mark A. Capps, an impartial vocational expert, testified.   Tr. 16, 84-89, 338 (Resume).   Plaintiff was represented by Carol J. Ponton, an attorney, but James Rowton, an attorney, represented Plaintiff during the hearing.   Tr. 16, 70, 72, 178-79, 230, 232-34.

On June 26, 2017, the ALJ entered a decision concluding that Plaintiff was not disabled.   Tr. 16-27.   On August 15, 2017, Plaintiff filed a request for review of the ALJ's decision.   Tr. 235.   On August 15, 2017, Plaintiff's counsel filed a two-page letter/brief with the Appeals Council.   Tr. 343-44.

On May 4, 2018, the Appeals Council denied Plaintiff's request for review having considered the August 15th letter and the request for review. Tr. 1-6.[3]   The ALJ's decision stands as the final decision of the Commissioner.   *See* 20 C.F.R. § 404.981.

---

[3]   The record includes a March 12, 2018, letter from Bruce D. Bassi, M.D., from UF Health Adult Psychiatry – Springhill stating Plaintiff "has been diagnosed with [PTSD] related to his responsibilities responding to 9/11."  Tr. 7.   There are additional medical records from Johnston Chiropractic Health Center dated September 12, 2017, showing complaints of lower back pain, Tr. 33-53, and records from North Florida Regional Medical Center for chest pain with a history of pulmonary embolus.   Tr. 55-69.

On July 3, 2018, Plaintiff, appearing pro se, filed a Complaint requesting judicial review of the Commissioner's final decision. ECF No. 1. Plaintiff filed a one-page memorandum of law, ECF No. 17, followed by the Commissioner's memorandum of law, ECF No. 19, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through June 30, 2017." Tr. 16.

2. "The claimant has not engaged in substantial gainful activity [SGA] since November 1, 2011, the alleged onset date." *Id*.; *but see supra* at 2 regarding amended alleged onset date.

3. "The claimant has the following severe impairments: disorders of the spine, arthritis lower extremities, diabetes mellitus, gastroesophageal reflux disease (GERD), history of pulmonary embolism, and post traumatic stress disorder (PTSD)."[4] *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 19. The ALJ considered the severity of Plaintiff's mental

---

The Appeals Council stated: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We do not consider and exhibit this evidence." Tr. 2.

[4] The ALJ is not required to identify all of the impairments that should be considered severe. *See* Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also* Mariarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

impairments and determined that they singly and in combination, do not meet or medically equal the criteria of Listing 12.06. *Id*. The ALJ considered the "paragraph B" criteria and determined that Plaintiff had *mild* limitations in understanding, remembering, or applying information and in interacting with others; *moderate* limitations with regard to concentrating, persisting, or maintaining pace; and *mild* limitations for adapting or managing oneself. *Id*. The ALJ also determined the evidence did not establish the presence of the "paragraph C" criteria. *Id*. The ALJ specifically stated that the "paragraph B" criteria are not a residual functional capacity [RFC] assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *Id*. The ALJ also noted that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment. The ALJ also considered Plaintiff's as part of the RFC assessment in accordance with Social Security Ruling 02-1p and determined that Plaintiff's "limitations resulting from his obesity would only prevent her [sic] from doing strenuous work activity." Tr. 24; *see infra* at n.11.

5. "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires the ability to alternate between sitting and standing at is [sic] option. He must avoid ladders, unprotected heights and operation of heavy moving machinery. The claimant must avoid dust, fumes, or gases. He can *occasionally* bend, crouch, kneel, and/or stoop. He must avoid push/pull arm controls and operation of foot controls. The claimant must also avoid squatting or crawling. He needs a low stress job, with no production line requirement. He is limited to simple tasks." Tr. 20; *see* Tr. 85-86 (hypothetical posed to vocational expert).

6. The claimant is unable to perform any past relevant work as a corrections officer and mail carrier, both medium exertion, with an SVP of 4. Tr. 25-26; *see* Tr. 85, 280.

7. The claimant was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The

claimant subsequently changed age category to closely approaching advanced age.   Tr. 26.

8.   "The claimant has at least a high school education and is able to communicate in English."   *Id*.; *see* Tr. 73, 85, 280.   (Plaintiff completed some college.   Tr. 73.)   Transferability of jobs is not material to the determination of disability.   Tr. 26.

9.   There are representative jobs that exist in significant numbers in the national economy that the claimant can perform.   *Id.*   The ALJ determined that if Plaintiff "had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21 and Rule 202.14."   *Id.*   The ALJ determined that Plaintiff's ability to perform all or substantially all the requirements of a full range of light work has been impeded by additional limitations.   As a result, the vocational expert was asked whether jobs exist in the national economy which Plaintiff can perform.   The vocational expert testified that Plaintiff is capable of performing several representative jobs including warehouse checker, assembler, and labeler, all light exertion, unskilled, with an SVP of 2.[5]   Tr. 26-27;

---

[5]   "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."   20 C.F.R. § 404.1568(a).   A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."   Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   *Id*.   Unskilled work corresponds to an SVP of 1 and 2.   SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).   Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.   SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).   In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."   20 C.F.R. § 404.1567(b).

*see* Tr. 86-87 (vocational expert opinion regarding available representative jobs).

10. "The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of this decision." Tr. 27.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

---

[6] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history."   Bloodsworth, 703 F.2d at 1240 (citations

omitted).   A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy."   42 U.S.C. § 423(d)(2)(A).   A disability is an "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A);

*see* 20 C.F.R. § 404.1509 (duration requirement).   Both the "impairment"

---

"Unless the Secretary has analyzed all evidence and has sufficiently explained the
weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational."   Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

and the "inability" must be expected to last not less than 12 months.

Barnhart v. Walton, 535 U.S. 212 (2002).   In addition, an individual is

entitled to DIB if he is under a disability prior to the expiration of his insured

status.   *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at

1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38

(1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d

96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.   20 C.F.R.

§ 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

---

[7]   An RFC is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c).

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v).   If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Pain is subjectively experienced by the claimant, but that does not

mean that only a mental health professional may express an opinion as to the effects of pain. To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. <u>Wilson</u>, 284 F.3d at 1225. This is guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of the patient's experience of pain. A clearly articulated credibility finding supported by substantial evidence will not be disturbed. <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995).

To analyze a claimant's subjective complaints, the ALJ considers the entire record, including the medical records; third-party and the claimant's statements; the claimant's daily activities; the duration, frequency, intensity of pain or other subjective complaint; the dosage, effectiveness, and side effects of medication; precipitating or aggravating factors; and functional restrictions. *See* 20 C.F.R §§ 404.1529 (explaining how symptoms and pain are evaluated); 404.1545(e) (regarding RFC, total limiting effects).

The Eleventh Circuit has stated that "credibility determinations are the

province of the ALJ." Moore, 405 F.3d at 1212 ("The ALJ may discount

subjective complaints of pain if inconsistencies are apparent in the

evidence as a whole.").

## IV. Legal Analysis

**Substantial evidence supports the ALJ's determination that
Plaintiff had the RFC to perform light work with limitations.**

1.

Plaintiff, appearing pro se, submitted a handwritten, one-page

memorandum and argues the ALJ should have found Plaintiff disabled.[8]

ECF No. 17.

To Whom it May Concern

I Keith L. Meacham was injured in the line of duty and had two total
knee replacements prior to that I was a first responder on 9-11 to
which I was diagnosed with PTSD, Gerds, Asthma, COPD, Chronic
Rhinitis, and Bronchitis. Which I didn't know until I got help with
World Trade Center helpline. My job NYS Dept. of Corrections
deemed me disabled. Also SSI Disability gave me disability for 2
yrs. thinking I was going back to work which did not happen. I have
[seen] SSI doctors a few times and each time they just asked me to
raise my arms and that was it. I take trazodone to help me sleep
(recurring 9-11) dreams and take Prozac to keep me stable. I am

---

[8] "Pro se briefs are liberally construed, Tannenbaum v. United States, 148 F.3d
1262, 1263 (11th Cir. 1998), but issues not raised in pro se briefs are deemed
abandoned. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

asking for you to see that I can receive SSI disability for my injur[ies] and the PTSD at 9[-]11 illness.   Also I have to keep being check[ed] for cancer related sickness every 6 months.   KM

ECF No. 17.[9]

2.

The ALJ began the assessment of Plaintiff's RFC[10]  with a discussion

of Plaintiff's testimony and function report.   Tr. 20-21.

> At the hearing in June 2017, the claimant testified that he currently weighs 280 pounds.   He currently works part-time as a crossing guard.   He works 1 ½ hour a day.   He previously was a corrections officer with the New York Department of Corrections for 15 years.   He was injured in the line of duty and filed a worker's compensation claim.   The claimant (sic) was settled in 2011.   In 2013, he worked for the postal service.   He has never filed for unemployment compensation.   He currently takes medication for his impairments and they do help.   Side effects from medication include drowsiness [Tr. 74-76].

> The claimant testified that during the day, he works as a crossing guard from 6:50a.m.-7:50a.m.   He then returns home and sleeps until time to go back to work form [sic] 1:40p.m.-2:15 p.m.   He lays down again after this second period of work.   He does no housework.   He teaches his kids to prepare meals.   He either stand[s] or sits to show them how to prepare the meals.   He is able to use a microwave.   He can wash dishes occasionally.   He

---

[9]   Plaintiff filed a similar memorandum on August 9, 2018, ECF No. 5, soon after he was granted leave to appear in forma pauperis, ECF No. 4.   This memorandum was prematurely filed and stricken without prejudice.   ECF No. 6.

[10]   The ALJ found the evidence supported an RFC for low stress jobs, not at production pace, and comprised of simple tasks.   Tr. 20.

is also able to make beds and sweep the floor.   He does not vacuum or mop.   He goes out to eat once a month.   He reads magazines and newspapers.   He also watches television and occasionally listens to the radio.   He uses computers for on-line banking and to check Facebook and e-mails.   He goes to watch his children play sports and helps them with their homework.   He goes to the grocery store once a week, but can only carry small bags.   He attends church twice a week.   He drives day [sic].   He was able to drive a distance of 90 minutes to attend the hearing with one stop.   He is able to bathe, shower, and dress himself [Tr. 76-79].

The claimant testified that he has to lie down after working as a crossing guard because of pain in his hips, shoulders, and knees. He has had surgery in both shoulders and is unable to reach overhead with his right arm.   He also cannot use his left arm for reaching.   He also cannot reach in front of himself such as to pack a box.   The claimant has pain in his knees every other day. He had them replaced, and they constantly swell up.   After working as a crossing guard, he has swelling in his knees.   He also has daily hip pain and receives treatment at Shands Orthopedic [Tr. 79-82].

The (sic) testified that he has difficulty climbing stairs.   It takes him 5-6 minutes to climb three flights of stairs.   He stated that he has been told he needs a hip replacement on the right.   He stated that he also has problems with his stomach and has (GERD).   He is also treated for PTSD.   He does not do well with being around crowds.   He is comfortable being a crossing guard because he knows the kids [Tr. 83-84].

In completing a function report, the claimant indicated that he gets the kids up and takes them to school.   He fixes his son breakfast and lunch and makes dinner.   He prepares meals daily.   His sons help him with cooking and cleaning.   He stated he only sleeps four hours a night.   He noted he forgets to shave ad [sic] his wife makes sure he gets his insulin shot every night.   He can shop for three hours. (Exhibit B5E) [Tr. 285-92][.]

Tr. 20-21.[11]

Prior to considering the medical evidence, the ALJ determined that

Plaintiff's

> allegations of disabling pain and limitations are not supported by the medical evidence. The evidence indicates that the claimant can move about and perform gainful work activity on a sustained basis as evidenced by his current part-time work. Longitudinal medical evidence shows that in August 2012, the claimant had a pulmonary function test that showed moderate restrictive ventilator defect. There was mildly diffusing capacity attributable to reduced lung volumes resulting in a reduced lung surface area for gas exchange. (Exhibit B2F) [Tr. 347-64][.]

Tr. 22.

Thereafter, the ALJ considered the medical evidence beginning in

September 2012 with a visit to Robert F. Tassan, M.D., for follow-up for a

pulmonary embolism. Tr. 22; *see* Tr. 353-54. Plaintiff had been

hospitalized in the prior year for chest pain and shortness of breath and,

---

[11] In evaluating Plaintiff's credibility, the ALJ may consider a claimant's daily activities when assessing the credibility of her complaints. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i) (providing that daily activities are relevant and can be considered by the ALJ when evaluating a claimant's symptoms; *but see* Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability). A claimant's ability to do some work, even at a low level, "may indicate that she is able to do more work." Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808 (11th Cir. 2013) (unpublished).

"[a]t that time, he been found to have left upper lobe pulmonary emboli." *Id*. He had been maintained on anticoagulation with Coumadin since the hospital admission and another physician recommended he continue Coumadin. He was referred for a hypercoagulable evaluation. *Id*.

In December 2012, Plaintiff was seen by Philip Micale, M.D., for a clinical assessment of his colon and was to have a repeat colonoscopy, which was performed on June 11, 2014, and yielded an impression of hemorrhoids, colon polyp removed. Tr. 22; 589.

In January 2014, Plaintiff had a follow-up appointment with Steven C. Jacoby, M.D. He reported no chest pain, irregular heartbeat, lower extremity edema and no history of deep vein thrombosis, pulmonary embolism, or claudication. Tr. 22, 365-67. Despite an elevated blood pressure and BMI of 43.66, his upper and lower extremities revealed no loss of strength or motion. Gait and station were normal. He was diagnosed with pulmonary embolism, NOS. He wanted lifelong anticoagulation if possible. *Id*.

In April 2014, Plaintiff presented to the emergency room for evaluation of urinary frequency, blurred vision and increased fluid intake. He reported a history of diabetes mellitus, but did not take his medication.

He had a severely elevated A1C and was diagnosed with hyperglycemia

and prescribed Januvia.   Tr. 22, 386-403.   In May 2014, Plaintiff was seen

by Gillian Boyd-Woschinko, M.D., for diabetes management having been

diagnosed since 2002 and with recent hyperglycemia.   Tr. 22, 379-81,

525-28.   He had been hospitalized for treatment of pulmonary embolism

when his A1C was 7.7, but he never followed up and continued to gain

weight and ultimately went to the emergency with blood sugar over 400,

given insulin and sent home.   A CT scan showed a kidney stone and fatty

liver and he had significant burning and paresthesia in his feet; he was to

increase Lantus and continue Metformin.   *Id.*

> In May 2014, the claimant underwent a gastroscopy.   He had
> complaints of abdominal pain.   The study revealed H. pylori
> gastritis [antral gastritis].   In June 2014, the claimant had a
> colonoscopy that showed hemorrhoids.   He also had a colon
> polyp removed. (Exhibit B15F) [Tr. 589-91][.]

> In August 2014, the claimant underwent a consultative physical
> examination conducted by Samuel Wilchfort, M.D.   He
> complained of knee pain with a history of bilateral knee
> replacements in 2009.   He also had a history of his bilateral
> shoulder pain with bilateral rotator cuff repairs.   He complained of
> pain and decreased range of motion.   The claimant also
> complained of back and cervical pain.   He also had hypertension
> and diabetes.   He was found to have colon carcinoma in 2012
> requiring surgery.   Later, he was found to have blood clots in his
> legs and pulmonary emboli.   On physical examination, he
> weighed 308 pounds.   In his shoulders, he had bilateral
> decreased forward elevation and abduction, left greater than right.

He had full range of motion of his cervical spine and could bend over to 80 degrees on examination of his lumbar spine. Straight leg raise was limited to 40 degrees right and 45 degrees left. On examination of the hips on both sides, flexion was mildly decreased. He had decreased external rotation and abduction on the right and normal on the left. The knees had normal extension and decreased flexion bilaterally. His gait essentially intact. An x-ray of his lumbar spine showed mild posterior narrowing at L5-Sl. Cervical spine x-ray was normal. Dr. Wilchfort diagnosed hypertension; diabetes; low back pain with preserved range of motion, but decreased straight leg raising; cervical spine pain, with preserved range of motion; status post left and right rotator cuff repairs with decreased range of motion; status post bilateral knee replacements; history of pulmonary emboli; and asthma. He noted that any job that required a lot of bending and lifting would be difficult for the claimant because of his bilateral shoulder and knee pain. (Exhibit B7F) [Tr. 464-67][.]

When seen by Dr. Micale in September 2014, the claimant reported experiencing bright red blood per rectum. He had been diagnosed with H. pylori gastritis. He had epigastric abdominal pain maintained on omeprazole. He was to start on Analpram cream and switched to Dexilant. (Exhibit B15F) [Tr. 605-08][.]

In May 2015, the claimant was seen by Martin Koenigsberg for follow-up of hypertension, hyperlipidemia, heart murmur, and pulmonary embolism. It was noted that he had undergone gastric sleeve in March 2015 and had lost 35 pounds. On physical examination, he weighed 279 pounds. It was noted that a stress test in January 2015 showed left ventricular ejection fraction was normal at 57%. The clinical assessment was chest pain, hypertension, hyperlipidemia, murmur, obesity, arthritis, pulmonary embolism and infarction, and diabetes. His medications were continued. (Exhibit B9F) [Tr. 500-02][.]

In October 2016, the claimant was seen by Mircea Sorin, M.D. with complaints of proteinuria and for follow-up for diabetes, hypertension, dyslipidemia. It was noted that diabetes was

reasonably well controlled with no significant medication side effects. He reported no symptoms. Hypertension was noted to be well controlled. Dyslipidemia was being treated with no significant medication side effects. He admitted that he had run out of his medication in July. He was advised regarding diabetic, low salt and low cholesterol diet. (Exhibit B16F) [Tr. 611-15][.]

Tr. 23.

The ALJ continued his analysis of the medical evidence pertaining to

Plaintiff's physical impairments and his conclusions are noted.

Despite the claimant's allegations of incapacitating back and neck pain, no doctor has found that he needs surgery. His condition has only been treated with medication. During examinations, the claimant's gait was normal. Specifically, doctors regularly observed his lack of acute distress and, accordingly, diffusely normal ranges of motion, motor strength, reflexes, and sensorium. X-rays taken during his consultative examination showed mild posterior narrowing at L5-S1 in the lumbar spine and cervical spine x-ray was normal. Despite the claimant's history of knee pain and knee replacement surgery, he has required limited treatment since April 2014. At the time of his consultative examination, the knees had normal extension and decreased flexion bilaterally (Exhibit [B]7F) [Tr. 464-67]. The undersigned [sic] has a history of bilateral rotator cuff surgery. There is no indication of significant continuing treatment. The undersigned has considered his history of shoulder pain in indicating the need to avoid push/pull of arm controls. Despite the claimant's diabetes mellitus, the evidence shows better control with medication and some evidence of noncompliance with medication and diet. He receives medication for hypertension and does not have end organ damage. The claimant also receives medication for GERD. Despite the claimant's allegations of respiratory impairments, the medical records again show conservative treatment. A pulmonary function test in February 2015 showed possible early obstructive pulmonary impairment. It was noted

that the findings could be due to a mild degree of small airway disease and/or the earliest stages of emphysema (Exhibit B8F) [Tr. 484-85].   The claimant has a history of pulmonary embolism treated with anticoagulation with no complications.

The undersigned has taken into consideration the controlling case law in the Eleventh Circuit regarding the standard used to assess pain and other symptoms.   This standard requires evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to  the alleged pain [*see supra* at 11-12].

Although the undersigned recognized that the claimant has some degree of limitation, the objective and other evidence simply does not establish that his symptom (sic) are as disabling.

None of the claimant's physicians enumerated any physical work-related limitations.   The Administrative Law Judge further notes that the claimant has not required extended inpatient hospitalization for a physical problem.   There is no indication that the claimant has any medication side effects that would affect his ability to work.   He does not require an assistive device for ambulation.   The undersigned has also considered the effects of the claimant's obesity.   According to Social Security Ruling 02-01p, when a claimant has obesity as a severe  impairment, an assessment should also be made of the effect obesity has on the individual's ability to perform routine movement and necessary physical activity.   The undersigned has undertaken this evaluation and determined that, although the claimant does have greater limitation because of his obesity, the medical evidence has not shown extreme limitation.   The claimant's limitations resulting from his obesity would only prevent her from doing strenuous work activity.

Tr. 24.[12]

The ALJ accounted for Plaintiff's credible limitations caused by his
diabetes and obesity in the RFC assessment.   *See* Solomon v. Comm'r of
Soc. Sec., 532 F. App'x 837, 840-41 (11th Cir. 2013) (unpublished).
The ALJ considered Plaintiff's claims of "incapacitating back and neck pain"
and that he "has only been treated with medication," and surgery has not
been recommended.   Tr. 24.   The ALJ also considered Plaintiff's history
of knee pain and knee replacement surgery as well as his history of
bilateral rotator cuff surgery with no indication of significant continuing
treatment for the latter.   *Id.*   As noted above, Plaintiff receives medication
for GERD and despite his "allegations of respiratory impairments, medical

---

[12]   Social Security Ruling 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002) stands for
the proposition that because a claimant's weight fell within the applicable definition of
obesity, obesity should be considered, among other impairments, because it can cause
further degradation of a claimant's physical capacity, especially in the presence of
certain impairments.   *Id.*   According to SSR 02-01p, "[t]he Clinical Guidelines
recognize three levels of obesity.   Level I includes BMIs of 30.0-34.9.   Level II includes
BMIs of 35.0-39.9.   Level III, termed "extreme" obesity and representing the greatest
risk for developing obesity-related impairments, includes BMIs greater than or equal to
40.   These levels describe the extent of obesity, but they do not correlate with any
specific degree of functional loss."   2002 SSR LEXIS 1, at *4-5.   In this case, Plaintiff's
BMI would place him in the Level III category.   *Id.*   "Because there is no listing for
obesity, [the Social Security Administration] will find that an individual with obesity
'meets' the requirements of a listing if he or she has another impairment that, by itself,
meets the requirements of the listing."   2002 SSR LEXIS 1, at *12-13.   The ALJ found
no such other impairment that met or equaled a listing and none is claimed by Plaintiff,
Tr. 19-20, *see supra* at 4-5.   ECF No. 17.

records again show conservative treatment." *Id*. Importantly, and again

as noted above, "[n]one of claimant's physicians enumerated any physical

work-related limitations." *Id*. The ALJ noted, however, that in August

2014, Dr. Wilchfort stated that "[a]ny job that is going to require a lot of

bending and lifting will be difficult because he has bilateral shoulder as well

as knee pain." Tr. 23, 465. The RFC restricted Plaintiff to occasional

bending, crouching, kneeling, and/or stooping. Tr. 20; *see* Tr. 85-86 for

vocational expert's response to the hypothetical regarding representative

jobs Plaintiff could perform.

The ALJ also considered Plaintiff's complaints of mental impairments

and noted as follows.

> Regarding his complaints of mental impairments, in January 2016,
> the claimant underwent an initial psychiatric evaluation conducted
> by Leonardo Rodriguez, M.D. [and Bruce D. Bassi, M.D.]. He
> complained of anxiety and depression stemming from marital
> problems. He noted that he was a devout Jehovah's Witness
> who preaches regularly. It was noted that he did not have a pain
> disorder. Symptoms of anxiety were excessive worry and
> anxiety. He had PTSD with nightmares and flashbacks [Tr. 545-
> 50, 631-35.]

> Symptoms of depression included loss of interest, loss of energy,
> decreased concentration, and poor sleep. On mental status
> examination, his mood was anxious and depressed. Affect was
> appropriate. When seen in February 2016, it was noted that he
> complained of anxiety, depression, and PTSD. He was
> previously a 9/11 first responder and had occasional flashbacks.

He reported symptoms of depression that included depressed mood and anhedonia. He had never been hospitalized for psychiatric treatment. On mental status examination, he denied any psychotic process. Attention and concentration were adequate. He was oriented to person, place, and time/date. He was diagnosed with PTSD, insomnia, and unspecified depressive disorder. He was interested in increasing Prozac and keeping trazodone at the same dose. He was recommended to see a therapist to control anger feelings. (Exhibit B12F) [Tr. 541-45, 631-35][.]

During a follow-up appointment in September 2016, the claimant reported he was keeping himself busy as a crossing guard and for a caterer during football games. He reported moderate depression symptoms and PTSD symptoms were controlled. He continued to have a maladaptive relationship with his wife. He indicated that Prozac had been working well for him. On mental status examination, he ambulated with some difficulty because of knee surgeries. Thought processes were linear, logical, and goal directed. He denied any psychotic process. He did not want to make any changes to medication. He had previously been referred for therapy, but cancelled the appointment. He was amenable to starting therapy. (Exhibit B17F) [Tr. 622-30][.]

The Administrative Law Judge accepts that the evidence shows some moderate limitations regarding concentrating and attending to work tasks, but these are not disabling. The claimant has not required psychiatric hospitalizations and has required limited treatment. The evidence clearly indicates that the claimant experiences no more than mild to moderate limitation even with limited treatment. His symptoms were mostly associated with marital discord and financial difficulties. There is no indication of panic attacks or crying spells of the frequency or severity that would preclude the claimant from performing gainful work activity.

The evidence further shows that the claimant cares for himself, performs household chores, does the laundry, manages his finances, attends church, and goes grocery shopping. In

addition, the claimant works part-time.   Although he does not
work full-time, this activity shows that he does have the capacity
to for [sic] work.   His current activities of daily living otherwise
appear to be self-limited only.

Tr. 24-25; *see supra* at n.11 regarding consideration of daily activities.

The ALJ considered the medical opinion evidence.   For example, the
ALJ noted that "[n]one of the claimant's physicians enumerated any
physical work-related limitations."   Tr. 24.   The ALJ also gave "great
weight to the State Agency physical medical assessment [by Alka Bishnoi,
M.D.] as it was consistent with the findings above (Exhibit B4A)."   Tr. 25,
128-132.   Dr. Bishnoi reviewed the record as of February 2015 and opined
that Plaintiff could perform light work with occasional climbing, stooping,
kneeling, crouching, and crawling; frequent balancing; and avoidance of
concentrated exposure to extreme heat or cold, wetness, and humidity and
moderate exposure to fumes, odors, dusts, gases, and poor ventilation.
Tr. 129-30.   Further, and notwithstanding the State Agency psychological
consultant's opinion that Plaintiff did not have a mental impairment, the ALJ
noted that he "resolved doubt in the claimant's favor in finding that he does
have a severe mental impairment based on more recent medical evidence
and his hearing testimony."   Tr. 25.   The findings of State agency medical
consultants may provide additional evidence to support the ALJ's findings,

*see* <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986), because State agency consultants are highly qualified specialists who are experts in the Social Security disability programs and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1513a(a)(1), (b)(1); SSR 17-2p, 2017 SSR LEXIS 2, at *5 (eff. Mar. 27, 2017).

The ALJ's RFC finding that Plaintiff could perform a reduced range of light work with exertional and non-exertional limitations is supported by substantial evidence.

Plaintiff requests this Court to re-weigh the evidence and substitute its discretion for that of the ALJ. <u>Bloodsworth</u>, 703 F.2d at 1239. As stated above, the role of a reviewing court under 42 U.S.C. § 405(g) is limited to determining whether there is substantial evidence in the record as a whole to support the decision. As long as the ALJ's decision is supported by substantial evidence and based upon correct application of the law, as it is in this case, it is entitled to deference and should be upheld.

On a final note, and as noted by the Commissioner, if Plaintiff's condition worsens, *e.g.*, a reoccurrence of cancer is found at a six-month checkup, ECF No. 17 at 1, such worsening would not be relevant to his

current claim although the disposition of his current disability claim would not impact future consideration of disability.   ECF No. 19 at 14; Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 863 (11th Cir. 2012) (unpublished) ("Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review."   (citation omitted)).

## V.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.   Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED.**   The Clerk shall enter Judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on January 11, 2019.

**s/   Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**
